In re COAST TRADING COMPANY, INC., Debtor.

John MITCHELL, Trustee of Coast Trading Company, Inc., Plaintiff,

v.

AMERICAN APPRAISAL COMPANY, Defendant.

Bankruptcy No. 382–00974–H–11.
Adv. No. 85–0095–H.

United States Bankruptcy Court, D. Oregon.

July 15, 1986.

John W. Weil, Portland, Or., for trustee.

David A. Foraker, Portland, Or., for defendant.

## MEMORANDUM OPINION

HENRY L. HESS, JR., Bankruptcy Judge.

This matter came before the court upon a trial in the above-captioned adversary proceeding. The trustee was represented by John W. Weil of Ransom, Blackman & Simson, Portland, Oregon. The defendant was represented by David A. Foraker of Greene & Markley, P.C., also of Portland, Oregon.

The complaint alleges that the defendant improperly received $6,000 in post-petition payments. The trustee alleges that court approval of employment of the defendant was not obtained before services were rendered. He also alleges that the $6,000 payment was never authorized by the court and that the bill did not contain an adequate description of the services rendered. Finally, the trustee alleged that the estate did not benefit from the defendant's work. In addition, the trustee objected, in the main file, to the defendant's claim. That objection was consolidated with this adversary proceeding by an order dated April 25, 1985.

The defendant filed an answer in which it admits that it received $6,000 in post-petition payments. In addition, the defendant asserts four affirmative defenses and a counterclaim. The counterclaim seeks payment of the alleged balance due to the defendant as an administrative expense.

Among the four affirmative defenses, the defendant argues that the court may, and should, enter a *nunc pro tunc* order appointing the defendant. Because the court agrees with this argument, the other affirmative defenses and the counterclaim will not be discussed.

The following facts do not appear to be disputed:

1. On April 7, 1982, the debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code.

2. On November 4, 1982, this court entered an order appointing Scoular-Bishop Grain Company to act as the debtor-in-possession's agent for the purpose of operating the business.

3. The debtor remained in possession until December 23, 1982.

4. On December 23, 1982, Mitchell was appointed as trustee for the estate.

5. The defendant was paid $6,000, post-petition, as a retainer.

At trial, the court finds that the following facts were established:

1. Edward Eilertson was, at the relevant times, employed by the debtor-in-possession as the corporate controller primarily in charge of financial information.

2. Mr. Eilertson contacted an employee of the defendant in late October, 1982, and requested that the defendant appraise one of the debtor-in-possession's facilities in Lewiston, Idaho.

3. On November 4, 1982, Mr. Eilertson again contacted an employee of the defendant and requested an appraisal of the debtor-in-possession's facilities located in Montana, North Dakota, Washington, and California.

4. Mr. Eilertson believed these appraisals were necessary in order to obtain financing secured by the facilities. The funds so obtained were to be used by the debtor-in-possession to reorganize.

5. The proposed plan dated October 6, 1982 provided that a new corporation was to be formed and that Scoulex, Inc., would acquire its stock. The new corporation would purchase the debtor-in-possession's Lewiston, Idaho facility for $5,000,000 after encumbrances were removed. The encumbrances were to be removed by offering the lien holders substitute collateral. The substitute collateral included the facilities located in Montana, North Dakota, Washington and California. Scoulex, Inc., would raise the necessary $5,000,000 by offering the Lewiston facility as collateral for a bond issue.

6. Mr. Eilertson was not aware that court approval was required to employ an appraiser.

7. The defendant had previously appraised the Lewiston facility and merely updated that appraisal at the request of Mr. Eilertson.

8. Mr. Eilertson does not recall whether he advised Mr. Brosvik or any other employee of the defendant that Mr. Eilertson's employer was in Chapter 11.

9. Scoular-Bishop Grain Co. had an impact on the debtor-in-possession's business decisions but did not dictate those decisions until after the court's order of November 4, 1982.

10. The debtor-in-possession's plan could not be accomplished without the appraisals.

Also at trial, the trustee offered the testimony of Jerome Shulkin, attorney for the creditors' committee and Mr. Mitchell, the trustee. Mr. Shulkin testified that, although the creditors' committee supported and solicited approval of the plan of October 6, 1982, had he been informed that the defendant was to be employed by the debtor, he would have objected. Mr. Mitchell testified that he did not use the appraisals prepared by the defendant and, in his opinion, the appraisals were of no benefit to the estate. He further testified that the estate is nearly fully administered and that creditors holding unsecured claims will not be paid in full.

Finally, the defendant offered the testimony of Wes Brosvik. Mr. Brosvik is the district manager of business development for the defendant. Mr. Brosvik testified that the defendant has a policy that work for bankrupts must be approved by the executive offices in Milwaukee, Wisconsin. Mr. Brosvik testified, however, that he was not aware, at the time the work was performed, that the debtor-in-possession was in bankruptcy. As a result, approval from Milwaukee was neither sought nor obtained.

Additionally, Mr. Brosvik testified that he was told that Coast Trading Co. was a debtor-in-possession. According to Mr. Brosvik, the term "debtor-in-possession" was unfamiliar to him and did not alert him to the fact that Coast Trading Co. was in bankruptcy. He also testified that he had no contact with, or knowledge of, Scoular Bishop Grain Co. Finally, Mr. Brosvik testified that the defendant has never held an interest adverse to the estate and is otherwise disinterested.

The trustee argues that in order to obtain an order with retroactive effect (frequently erroneously referred to as a *nunc pro tunc* order), the defendant must satisfy each of the nine tests outlined in *In re*

*Twinton Properties Partnership,* 27 B.R. 817, 819–20 (Bkrtcy.M.D.Tn.1983). *In re Willamette Timber Systems, Inc.,* 54 B.R. 485 (Bkrtcy.D.Or.1985); *In re Kroeger Properties and Development, Inc.,* 57 B.R. 821 (9th Cir. BAP 1986).

This court has just issued, however, an opinion which analyzes and criticizes some of these nine tests. *In re Crook,* 62 B.R. 937 (Bkrtcy.D.Or.1986), Hess, J. As the court noted in *Crook, In re Laurent Watch Co., Inc.,* 539 F.2d 1231 (9th Cir.1976) has been interpreted to allow orders with retroactive effect where equity so dictates. *Id.,* at 940. As *Crook* further pointed out, however, it is difficult to propose a specific set of tests which will resolve all future cases. Equitable analysis requires a case-by-case factual inquiry. The focus of that inquiry should be on the statutory requirements for employment of professionals and the reasons given for failure to comply therewith, rather than the factors outlined in *Twinton.*

■ In other words, a professional seeking an untimely order authorizing employment should meet the requirements of § 327(a) and Bankruptcy Rule 2014(a) (except for the requirement of pre-employment approval), the same as any other applicant would. In addition, the professional must satisfactorily explain to the court his failure to obtain prior court approval.

In the instant case, had the debtor-in-possession sought an order of the court authorizing the employment of the defendant, the court would have granted it. The pending plan contemplated a substitution of collateral and sale of the Lewiston, Idaho facility. The court finds that the appraisals were necessary in order to accomplish this.

Although the attorney for the creditors' committee testified that he would have objected to the entry of an order authorizing employment of the professional, the court is not persuaded by this testimony for two reasons.

First, the creditors' committee actively sought approval of the plan. This directly conflicts with the testimony of Mr. Shulkin that the committee would have opposed approval of work necessary to accomplish the plan.

Second, even if the creditors' committee had voiced an objection at a hypothetical hearing on employment of the defendant, the court would have overruled it for the reason that, as previously stated, the services would have appeared necessary to the court.

■ In addition, the facts that, ultimately, the plan was not confirmed, a trustee was appointed, and the trustee did not use the appraisals is irrelevant.

As a practical matter, the court would not have known this at a hypothetical employment-authorization hearing. As an equitable matter, it is hardly fair to deny compensation to a professional because hindsight reveals that which no one could foresee.

■ Further, it appears to the court that the defendant is qualified under § 327(a) and has satisfied Bankruptcy Rule 2014(a). Specifically, the testimony is clear that the defendant is qualified, was not a volunteer, and is disinterested. Hence, it appears that, had the debtor-in-possession sought prior court approval, it would have been granted.

Finally, the court believes that the defendant has proferred a reasonable excuse for its failure to obtain prior court approval. It is apparent from the testimony of Mr. Brosvik that American Appraisal Company failed to obtain court approval because Mr. Brosvik failed to advise the executive office that Coast Trading Company was in bankruptcy. Mr. Brosvik further testified that the reason for his failure was that he did not understand that the term "debtor-in-possession" meant that the debtor was in bankruptcy.

While this may be an extreme case, the court does not necessarily expect lay persons to understand legal terms of art. In addition, the term "debtor" is used outside

the bankruptcy context. The court believes that the hypothetical reasonable person would not necessarily relate the term "debtor-in-possession" to bankruptcy. Accordingly, the court is satisfied with the defendant's excuse.

Therefore, the court will enter an order approving the defendant's employment retroactively to November 1, 1982. The amount of compensation to be awarded, if any, will be determined at a later hearing.